# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DAMIAN HENRY | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 08-1348 |
| | : | |
| TODD BUSKIRK, et al | : | |
| Defendants | : | |

# MEMORANDUM

**STENGEL, J.**                                                                                February 21, 2011

Damian Henry has filed claims under the Eighth Amendment and the Americans with Disabilities Act alleging that numerous medical and prison officials at the Northampton County Prison were deliberately indifferent to his handicap and other medical needs. Defendants PrimeCare Medical, Inc., the corporation contracted by the prison to provide health services for inmates, and Dr. Victoria Gessner, have filed motions to dismiss Mr. Henry's claims against them.

## I.    BACKGROUND[1]

The allegations of Mr. Henry's complaint are as follows: he was shot seven times on March 22, 2007 and, as a result, was injured in his lower back and right leg and suffered a shattered right ankle and shattered right [tibia] bone." Compl. ¶ 7. He had two

---

[1] Because the instant motions to dismiss were filed by defendants PrimeCare Medical and Dr. Gessner, I set forth the allegations in the complaint only as they relate to these two defendants.

surgeries to correct his injuries and was moved to Northampton County Prison ("Prison") on September 17, 2007, "in between scheduled appointments for medical treatment" and before he could undergo required additional surgery for a bone graft in his right tibia. Id. ¶¶ 8-10. When he arrived at the Prison, he was assigned to the Medical Housing Unit because he was in a leg cast and walked with crutches. Id. at ¶ 11. On September 21, 2007, he met with Dr. Victoria Gessner,[2] and told her of his existing injuries and the need for a bone graft to his right tibia. Id. at ¶ 12. Mr. Henry signed a release so that Dr. Gessner could obtain his medical records from the hospitals in which he received medical treatment before arriving at the prison, and as a result, she "knew the extent of [his] existing injuries and his need for further surgery and therapy as ordered by physicians at those hospitals." Id. at ¶ 14. Despite her knowledge of his conditions, Dr. Gessner cleared Mr. Henry to be housed in the general prison population, "exposing him to unsafe and dangerous conditions within the prison, having to navigate with crutches two tier levels up two flights of stairs." Id. at ¶ 16.

On or about September 27, 2007, Mr. Henry fell going down the stairs while on his way to take a shower in the Medical Housing Unit, reinjuring his back, hip, leg, neck, and head and temporarily losing consciousness. Id. at ¶¶ 20, 22. As a result of this accident, he was admitted to St. Luke's Hospital, where doctors ordered that upon his return to the prison he should remain in the Medical Housing Unit for observation. Id. at ¶ 23-24. On

---

[2] Mr. Henry identifies this defendant only as "Dr. Gessner" in his complaint.

September 28, 2007, Dr. Gessner saw Mr. Henry and "overruled" the St. Luke's recommendation that he remain in the Medical Housing Unit, sending him back to the general population. Id. at ¶ 25. She also "took the neck brace that was [prescribed] to him for no reason." Id. On October 6, 2007, Dr. Gessner "cleared [Mr. Henry] to shower in the shower area on the tier knowing that the condition of the shower area was not handicap accessible[.]" Id. at ¶ 30. From November 2007 through March of 2008, Mr. Henry slipped and fell numerous times in the shower area Dr. Gessner had ordered that he use. Id. at ¶ 47.

In January of 2008, Mr. Henry had an anxiety attack due to the post-traumatic stress disorder which resulted from his being shot. He "submitted several [requests] to the medical department to see the psychiatrist but was never called to see anyone." Id. at ¶ 43.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as

true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

It remains true that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Rather, the Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must, however, "allege facts suggestive of [the proscribed] conduct," Twombly, 550 U.S. at 564, and it must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

In assessing the merits of a motion to dismiss, courts must be careful to recognize that their duty to accept allegations as true does not apply to legal conclusions. See Ashcroft v. Iqbal, - - U.S. - -, 129 S.Ct. 1937, 1949 (2009). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 1950 (emphasis added). In recognition of these principles, courts must first identify those allegations in a complaint that are mere conclusions and are not entitled to the assumption of truth and then consider whether the complaint's factual allegations plausibly suggest an entitlement

to relief. Iqbal, 129 S.Ct. at 1950 (emphasis added).

III.   DISCUSSION

   A.   **Eighth Amendment Deliberate Indifference Claims**

Government bodies and state actors may be sued under Section 1983 for constitutional rights violations. A Section 1983 claim based on a violation of the Eighth Amendment's prohibition of unnecessary and wanton infliction of pain arises where prison officials or doctors exhibit deliberate indifference to serious medical needs of prisoners. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976). An Eighth Amendment claim will arise from the deliberate indifference of (1) prison doctors in their response to the prisoner's needs; (2) prison guards intentionally denying or delaying access to medical care; or (3) prison staff intentionally interfering with medical treatment once it is prescribed. Id. at 104-05. A deliberate indifference claim has two components: an objective component under which the plaintiff must show that denial of care itself was serious or that it had serious consequences; and a subjective component under which the plaintiff must show that the defendant had a sufficiently culpable state of mind. See Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).

Deliberate indifference occurs where a defendant (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; (3) prevents a prisoner from receiving needed

or recommended medical treatment; or (4) persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury." Rouse v. Allen, 182 F.3d 192, 197 (3d Cir. 1999). However, "claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" Id. (citing Estelle, 429 U.S. at 105, for the proposition that, "in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'").

1.  **Deliberate Indifference Claim Against Dr. Gessner**

Dr. Gessner argues that plaintiff's deliberate indifference claim against her should be dismissed because the allegations in Mr. Henry's complaint "show that [he] merely disagrees with the medical decisions made by Dr. Gessner." Gessner Mot. To Dismiss, 5. I disagree. Construing his *pro se* complaint liberally, as we must, Mr. Henry's allegations meet both the objective and subjective prongs of a deliberate indifference claim. He claims that he had a serious medical condition, in that he needed treatment, including surgery, for major injuries to his legs and back resulting from being shot seven times. He alleges that when he arrived at the prison, he had a leg cast, walked with crutches, and required a bone graft. Despite her knowledge of the seriousness of his injuries and that he required additional treatment, Dr. Gessner cleared Mr. Henry to live in the general population unit of the prison instead of giving him the treatment he required in the Medical Housing Unit. He also claims that after a severe fall required that he be treated

at St. Luke's Hospital and doctors there recommended that he remain in the Medical Housing Unit for observation, she refused to treat him, released him to the general population, and took from him the neck brace those doctors prescribed and gave to him. Construed liberally, these are allegations that Dr. Gessner refused to treat Mr. Henry's leg when he arrived at the Prison, and then refused to follow the advice of other physicians that he remain in a medical unit for observation and treatment and wear a neck brace following his fall.

At the motion to dismiss stage, Mr. Henry's allegations state a plausible claim for relief against Dr. Gessner. Therefore, her motion to dismiss his deliberate indifference claim against her will be denied. See Rodriguez v. Smith, No. 03-3675, 2005 WL 1484591 at *5 (E.D.Pa. June 21, 2005) (denying motion to dismiss § 1983 claims against prison doctors who rendered ineffective treatment for plaintiff's brain tumor and who "prevented Plaintiff from receiving the treatment recommended by specialists"); Scantling v. Vaughn, No. 03-0067, 2004 WL 306126 at *7-8 (E.D.Pa. Feb. 12, 2004) (denying motion to dismiss plaintiff's § 1983 claims against prison doctors who were alleged to have known about his pain and denied the treatment he requested).

### 2. Deliberate Indifference Claim Against PrimeCare Medical

In a separate motion, defendant PrimeCare Medical argues that Mr. Henry's deliberate indifference claims should be dismissed. A private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior*

theory; rather, it can only be held liable for constitutional violations if it has a custom[3] or policiy[4] exhibiting deliberate indifference to a prisoner's serious medical needs. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Such liability will arise in three situations, the most relevant of which in this case is "where the policymaker has failed to act affirmatively at all [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Natale, 318 F.3d at 584 (quoting Bryan County, 520 U.S. at 417-418). In other words, supervisory liability can arise where the relevant entity "turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights." Id.

PrimeCare claims that Mr. Henry's Section 1983 claim against it should be dismissed because he "fails to mention PrimeCare in the entirety of the Amended

---

[3] A custom, while not formally adopted by the municipality, may lead to liability if the "relevant practice is so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

[4] A municipal policy, for purposes of § 1983, is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a government] body's officers." Monell, 436 U.S. at 690; see also Berg v. County of Allegheny, 219 F.3d 261, 275 (3d Cir. 2000) ("Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict.") (citation omitted).

Complaint, aside from listing them as a Defendant" and "fails to make any factual allegations with regard to PrimeCare." PrimeCare Mot. To Dismiss, 2. Mr. Henry asserts the facts set forth in his complaint are sufficient to state a claim against PrimeCare. He argues that he:

> has [pleaded] sufficient facts to find that Primecare has a policy of disregarding the special needs (including psychiatric care) of inmates placed under its care. Specifically, Primecare is alleged to have entirely disregarded Plaintiff's inability to negotiate stairs safely with his shower toiletries (and his multiple falls causing serious bodily injury and hospitalization) by repeatedly releasing him to general population and a cell two tiers above the nearest handicapped shower and totally ignoring his need for psychiatric care to address the severe anxiety he is experiencing as a result of the conditions of his confinement.

Pl.'s Resp. To PrimeCare Mot. To Dismiss, 8. He argues a jury could conclude based on the facts alleged that PrimeCare failed to establish a policy to address "immediate accessibility and psychiatric needs of inmates with serious medical conditions" and that the risk associated with these failures is so obvious as to constitute deliberate indifference. Mr. Henry's characterization of his complaint ignores that, in reality, he asserts nowhere in it that PrimeCare had any policy, practice, or custom which led to his injuries, or had direct involvement in the alleged wrongful conduct. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Even liberally construed, Mr. Henry's claim is based almost entirely on the allegations he directs at Dr. Gessner - he asserts that she was the person made aware of his medical needs, she repeatedly released him to the general population numerous times, and she ignored the instructions of Mr. Henry's other

treating physicians. He does not allege that PrimeCare was the moving force behind her alleged unconstitutional behavior. As far as his claim that PrimeCare ignored his request for psychiatric care, he asserts no custom or policy in connection with this action and simply states that he submitted requests to the "medical staff" which were ignored. A Section 1983 claim cannot be based on a theory of *respondeat superior*, and because Mr. Henry makes no concrete allegations of a custom, policy, or practice leading to the denial of serious medical needs, it is proper to dismiss the deliberate indifference claim Mr. Henry asserts against PrimeCare.

### B. ADA Claims

Title II of the Americans with Disabilities Act provides that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. There is no dispute that "a 'public entity' includes state prisons and 'Title II authorizes suits by private citizens for money damages against public entities that violate § 12132.'" Hubbard v. Taylor, 452 F. Supp. 2d 533, 544 (D.Del. 2006) (citing United States v. Georgia, 546 U.S. 151, 126 S.Ct. 877, 879, 163 L.Ed.2d 650 (2006)). However, numerous courts to have addressed the viability of prisoner ADA claims asserted against private prison health care providers have observed that, because they are not public entities, such providers do not fall under Title II. See O'Donnell v. Penn.

Dep't of Corrections, No. 4:08-136, 2010 WL 455246 at *3 (M.D.Pa. Feb. 2, 2010) ("The plain language of the ADA evinces an intent by Congress that the statute only apply to public entities[.]); Gellock v. Prison Health Services, No. 07-8, 2008 WL 396873 at *8 (W.D.Pa. Feb. 8, 2008) ("[I]t is noted that an ADA claim under Title II may only be brought against a public entity, which, in this case, is the DOC. As a result, Plaintiff's ADA claim against all other Defendants must be dismissed."). For the same reason, individual defendants are not subject to suit under Title II. Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002).

I will dismiss the ADA claims against PrimeCare Medical and Dr. Gessner, as they are, respectively, a private entity and an individual not subject to suit.

## IV. CONCLUSION

For the reasons set forth above, I will grant PrimeCare Medical's motion to dismiss in its entirety. I will grant the motion to dismiss the ADA claim asserted against Dr. Gessner but deny the motion to dismiss the Section 1983 claim asserted against her. An appropriate order follows.