**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAMIEN HENRY,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **NO. 08-1348** |
| | : | |
| **TODD BUSKIRK, et al.,** | : | |
| **Defendants** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                              **September 26, 2011**

Damian Henry filed this prisoner civil rights action against prison officials at Northampton County Prison ("NCP") alleging (1) an Eighth Amendment claim for civil rights violations under 42 U.S.C. § 1983, (2) violations of the Americans with Disabilities Act, (3) violations of his right to equal protection under the laws, (4) violations of the Rehabilitation Act, and (5) retaliation by defendants in violation of his First and Fourteenth Amendment rights. The three remaining defendants – Todd Buskirk, Bill Sweeney, and Mike Bateman ("Defendants") – filed a motion for summary judgment. Mr. Buskirk is the Warden, Mr. Sweeney is the Deputy Warden, and Mike Bateman is the Head of the Classification Department at NCP. Mr. Henry has failed to come forward with evidence showing a dispute of material fact for any of his claims. For the reasons set forth below, I will grant the defendants' motion.

## I.   BACKGROUND[1]

Prior to his incarceration at Northampton County Prison ("NCP"), Mr. Henry was shot seven times in the lower extremities of his body, sustaining injuries to his lower back, right leg and ankle. (Doc. No. 46[2] attach. 1[3] at ¶ 1, Henry Dep. at 14-15). Mr. Henry underwent two separate surgeries in March 2007 and June 2007 to repair his broken right leg. (Henry Dep. at 14-15). Mr. Henry was committed to NCP on September 17, 2007. (Doc. No. 46, attach. 1 at ¶ 1). Upon his entry to NCP, Mr. Henry was on crutches and placed in the Medical Housing Unit. (Id. at ¶ 2-3). On September 27, 2007, Mr. Henry was medically released to the general population. (Id. at ¶ 5). Mr. Henry alleges that Dr. Victoria Gessner, of PrimeCare Medical, Inc., cleared Mr. Henry to be housed in the general prison population, "exposing him to unsafe and dangerous conditions within the prison, having to navigate with crutches two tier levels up two flights of stairs." (Compl. at ¶ 16).

On September 27, 2007, Mr. Henry was walking down a set of stairs on the unit with crutches to take a shower and fell, landing on his right leg and side. (Doc. No. 46, attach. 1 at ¶ 6). Mr. Henry was transported to St. Luke's Hospital and returned with instructions to remain in medical housing for three days or until evaluated by a physician. (Id. at ¶ 7). Mr. Henry was returned to the Medical Unit at NCP and was seen by Dr. Gessner on September 28, 2007. (Id. at ¶ 8). Mr. Henry was discharged from medical

---

[1] I have viewed the facts in the light most favorable to the plaintiff as the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
[2] "Plaintiff's Memorandum in Support of His Answer and Denials with Citation to Counter-Evidence in Opposition to Defendants' Motion for Summary Judgment."
[3] "Plaintiff's Answer and Denials with Citation to Counter-Evidence in Opposition to Defendants' Purported Statement of Undisputed Facts in Support of Their Motion for Summary Judgment."

housing and returned to H-tier in a wheel chair with instructions to shower on H-tier. (Doc. No. 46 at Exh. 5).  Mr. Henry alleges that Dr. Gessner met with Mr. Henry and "overruled" a St. Luke's physician's recommendation that he remain in the Medical Housing Unit, sending him back to the general population.  (Compl. at ¶ 25).

On October 4, 2007, an NCP correctional officer approached medical to obtain crutches to assist Mr. Henry to move to and from the shower on his unit.  (Doc. No. 46, attach. 1 at ¶ 10).  On November 23, 2007, Mr. Henry slipped in the shower.  (Id.)  NCP officials notified medical officials and medical personnel arrived to examine Mr. Henry. (Id. at  Exh. 8).   On November 30, 2007, Mr. Henry tripped on the stairs because he was carrying soap and a towel in his left hand.  (Id. at ¶ 10, 12).  He was immediately seen by a nurse and seen by medical personnel every day or every other day for follow up medical care after the fall.  (Id. at ¶ 11).

There is a grievance procedure permitting inmates to file grievances and raise complaints or concerns with NCP administration.  (Id. at ¶ 20).  NCP issues an Inmate Handbook to all inmates at NCP and the Handbook directs inmates who need medical assistance to file a medical grievance with PrimeCare.  (Id at ¶ 23).  On January 18, 2008, Mr. Henry wrote a letter to Warden Buskirk advising him of his concerns with his medical condition.  (Id. at  ¶ 21).  Warden Buskirk responded to Mr. Henry's complaint and advised him to follow the proper procedures for filing a grievance.  (Id. at ¶ 22).  On or about March 5, 2008, Mr. Henry again wrote Warden Buskirk's office.  (Id. at ¶ 24).  Warden Buskirk responded to Mr. Henry's complaint on March 24, 2008 and again directed him to follow the established policy and protocol regarding a medical grievance

at NCP.  (Id. at ¶ 25).  Mr. Henry acknowledges that Warden Buskirk responded to his complaints and directed him to the medical department.  (Id. at ¶ 26).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  FED. R. CIV. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>

<u>Corp.</u>, 477 U.S. at 322; <u>Harter v. GAF Corp.</u>, 967 F.2d 846, 852 (3d Cir.1992).

Under Rule 56, the Court must view the evidence presented on the motion in the

light most favorable to the non-moving party. <u>Anderson</u>, 477 U.S. at 255.  There must be

enough evidence with respect to a particular issue to enable a reasonable jury to find in

favor of the non-moving party. <u>Id.</u> at 248.  A party asserting that a fact is genuinely

disputed must support the assertion by citing to depositions, documents, electronically

stored information, affidavits or declarations, stipulations, admissions, interrogatory

answers, or other materials.  FED. R. CIV. P. 56(c)(1).


## III.   DISCUSSION

### A. Eighth and Fourteenth Amendment Deliberate Indifference Claims (Counts 1, 5, 6, 7)

Mr. Henry seeks to enforce his Eighth Amendment right to adequate medical care

in Counts 1, 5, 6, and 7 of his Complaint.  In order to establish his § 1983 civil rights

claims, Mr. Henry must demonstrate that the defendants, acting under color of state law,

deprived him of a right, privilege, or immunity secured by the Constitution or the laws of

the United States.  <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999);

<u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995).[4]  The Eighth

Amendment prohibits the imposition of "unnecessary and wanton infliction of pain

---

[4] The statute authorizes suits against "persons."  It is well settled that state officials, acting in their official capacities, are not "persons" subject to liability within the meaning of the statute.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>Blanciak v. Allegheny Ludlum Corp.</u>, 77 F.3d 690, 697 (3d. Cir. 1996).  Defendants Buskirk, Sweeney, and Bateman are all employees of the State's Department of Corrections.  Accordingly, the claims against them in their official capacities for monetary damages are dismissed.

contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).   In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs.

An Eighth Amendment violation may arise where conditions of confinement pose a substantial risk of serious harm.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  In "prison-conditions cases," the inmate must also show "deliberate indifference" by prison officials to his health or safety.   Id.  For an inmate to prevail under a § 1983 claim, he must (1) make an objective showing that he has a "serious medical need" or that he is exposed to a "pervasive risk of harm" and (2) make a subjective showing that the prison official knew of and disregarded the prisoner's serious medical need.  Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002).

First, under the objective prong, a "serious medical need" is one that "has been diagnosed by a physician as requiring treatment or  . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Co. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d. Cir. 1987).  Additionally, the medical need is considered serious where denial or delay causes an inmate to suffer a life-long handicap or permanent loss.  Id.  Here, Defendants do not contest that Mr. Henry had a serious medical need.  Accordingly, I find that a reasonable jury could find that Mr. Henry had a serious medical need under the objective prong of the deliberate indifference test.

Second, under the subjective prong, a prison official is not liable merely because he demonstrates an "ordinary lack of due care for the prisoner's interests or safety."

Whitley v. Albers, 475 U.S. 312, 319 (1986).  Rather, the plaintiff must demonstrate that

the prison official acted or failed to act in spite of his or her knowledge of a substantial

risk of serious harm to the plaintiff.  Farmer, 511 U.S. at 842.  In addressing the

subjective prong, the Third Circuit has indicated that deliberate indifference is a

"subjective standard of liability consistent with recklessness as that term is defined in

criminal law."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d. Cir. 2003).

Deliberate indifference may be manifested by an intentional refusal to provide care, the

delay of medical treatment for non-medical reasons, a denial of prescribed medical

treatment, or a denial of reasonable requests for treatment that results in suffering or risk

of injury.  See Rouse, 182 F.3d at 197.  However, the deliberate indifference standard is a

"stringent standard of fault requiring proof that a [state official] disregarded a known or

obvious consequence of his action."  Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410

(1997) (emphasis added).

   The Supreme Court, in characterizing deliberate indifference, has stated that "an

official's failure to alleviate a significant risk that he should have perceived but did not,

while no cause for condemnation, cannot under our cases be condemned as the infliction

of punishment."  Farmer, 511 U.S. at 838.  Furthermore, a plaintiff must demonstrate

that the defendant's acts or omissions constituted "an unnecessary and wanton infliction

of pain" "repugnant to the conscience of mankind" that "offend[s] evolving standards of

decency."  Estelle, 429 U.S. at 105-06.  Accordingly, it is "well-settled" that "claims of

negligence of medical malpractice, without some more culpable state of mind, do not

constitute 'deliberate indifference.'"  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999);

Perkins v. Scwappach, 2010 WL 1558687 (E.D. Pa. 2010).

Mr. Henry's § 1983 claim alleges that the defendants intentionally denied or

delayed access to medical care or intentionally interfered with prescribed treatment.  Mr.

Henry does have the burden of coming forward with evidence in response to a motion for

summary judgment.  Upon a careful consideration of the facts in this case, I find that Mr.

Henry has failed to point to evidence sufficient to show the Defendants were deliberately

indifferent to Mr. Henry's serious medical needs under the subjective prong such that his

claim can survive a summary judgment motion.

When Mr. Henry fell down the stairs while at NCP, he was seen by medical staff

and transported to St. Luke's Hospital for evaluation.  When he was returned to NCP, he

was admitted to the Medical Unit and seen by Dr. Victoria Gessner of PrimeCare

Medical, Inc.  Mr. Henry was discharged from medical housing and returned to H-tier in

a wheel chair with instructions to shower on H-tier.  However, in his response, Mr. Henry

claims that an NCP Lieutenant "countermanded" medical instructions and returned Mr.

Henry to the general population.[5]  To support this assertion, Mr. Henry cites generally to

a PrimeCare Medical Chart, Doc. No. 45, Exh. 5.   However, there is nothing in Exhibit 5

that shows Dr. Gessner's order was "countermanded" by NCP staff.  The notation in the

chart indicates "per Lt. Battesi, I/M may have shower chair on flats (this is S.O.P.) is no

need to shower in medical."  Id.  This statement alone does not allow a fact finder to

_____

[5] Although, I note that Mr. Henry's Complaint alleges that Dr. Gessner saw Mr. Henry and "overruled" the St. Luke's recommendation that he remain in the Medical Housing Unit, sending him back to the general population. (Compl. at ¶ 25).

reasonably conclude that an NCP staff member countermanded or interfered with medical treatment.  Rather, the notation indicates that a Lt. Battesi, who is not a party in this matter and has not been deposed, indicates that medical personnel were informed of the prison's standard operating procedure on the flats.  It does not indicate that any of the defendants acted contrary to a medical order causing Mr. Henry injury.

In fact, NCP correctional officers aided and assisted Mr. Henry.  An NCP correctional officer approached medical to obtain crutches to assist Mr. Henry to move to and from the shower.  When Mr. Henry slipped in the shower, NCP officials notified the medical department and medical personnel arrived to examine Mr. Henry.  When Mr. Henry tripped on the stairs because he was carrying soap and a towel in his left hand, he was seen by a nurse and seen by medical personnel every day or every other day for follow up medical care after the fall.  Defendants did not intentionally deny or delay access to medical care or intentionally interfere with medical treatment once it was prescribed.

Mr. Henry also wrote defendants asking for assistance "because of his medical problems" and claims that defendants "ignored his needs."  Plaintiff has not established that defendants ignored his medical needs.  To the contrary, Warden Buskirk responded to Mr. Henry's letters in a timely manner and advised Mr. Henry that he needed to submit his request to the medical department.  Warden Buskirk also directed Mr. Henry to the inmate handbook and advised him to follow the proper medical grievance procedure. When Mr. Henry sent Warden Buskirk a second letter, the Warden again responded by directing Mr. Henry to follow the proper procedures as outlined in his handbook.

9

Furthermore, Warden Buskirk specifically directed him to the section advising how to file a medical grievance.  Additionally, the Warden also forwarded a copy of Mr. Henry's issues to the Medical Division for their review.  Finally, Mr. Henry did not take any depositions or serve any interrogatories on any of the defendants to establish their mental state.

Accordingly, I find that the Defendants did not act "recklessly" and with the required culpable mental state under the subjective prong of the deliberate indifference test.  Mr. Henry has not shown that defendants denied or delayed Mr. Henry's medical care.  He has not demonstrated that prison staff intentionally interfered with medical treatment once it was prescribed.  Because Mr. Henry has failed to produce evidence from which a reasonable jury could conclude that the Defendants acted with deliberate indifference, I will grant the Defendants' motion for summary judgment on Counts 1, 5, 6 and 7.

### B.  Americans with Disabilities Act (ADA) (Counts 2, 4, 7, and 8) and Rehabilitation Act (Count 2) [6]

Mr. Henry brings suit against the defendants both in their individual and official capacities for violating the Americans with Disabilities Act and Rehabilitation Act.

---

[6] Title II of the ADA is interpreted to be consistent with the Rehabilitation Act, which contains nearly identical language. Chisolm v. McManimon, 275 F.3d 315, 325 n.9 (3d Cir. 2001). The present discussion is confined to the ADA, but applicable to Mr. Henry's Rehabilitation Act claim.  The Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 7(20) [29 USCS § 705(20)], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C.S § 794.

To demonstrate a violation under the ADA[7], Mr. Henry must establish (1) he is an individual with a disability; (2) he was denied the benefits of a public entity's program or activity for which he is otherwise qualified, or would be qualified if reasonable modifications were made, or was otherwise discriminated against by the public entity, and (3) he was excluded from the program or discriminated against by reason of his disability.  29 U.S.C. § 706(7)(B); 42 U.S.C. § 12132 (prohibiting public entities from discriminating against individuals with disabilities, or excluding disabled persons from participating or otherwise benefiting from a public entity's "services, programs, or activities"); <u>Wagner v. Fair Acres Geriatric Ctr.</u>, 49 F.3d 1002, 1009 (3d Cir. 1995).

Defendants contend that Mr. Henry has failed to present any evidence that he has a disability under the ADA because Mr. Henry has not "established any evidence that his leg injury was permanent, or severely restricted his daily activities."  Mr. Henry was shot multiple times resulting in an initial medical classification record that his broken leg restricted his mobility or was an obvious deformit[y] or handicap.  Furthermore, Mr. Henry's medical charts indicate that a correctional officer attempted to obtain crutches for the inmate because of his "special needs."  Although Mr. Henry does not provide this Court with evidence of the duration and long-term impact of his injury, I will find that there is a genuine issue of material fact such that a reasonable jury could find that Mr. Henry is a qualified individual with a disability.

---

[7] Correctional facilities such as NCP fall within the scope of "public entities" subject to Title II of the ADA, which also applies to services, programs and activities provided within correctional institutions.  <u>See</u> <u>Pennsylvania Dep't of Corr. v. Yeskey</u>, 524 U.S. 206 (1998); <u>Chisolm</u>, 275 F.3d at 325. However, an ADA claim cannot be brought against individual defendants, and plaintiff's claim is accordingly dismissed against the individuals named in his complaint.  <u>See</u> <u>Calloway v. Boro of Glassboro Dep't of Police</u>, 89 F. Supp. 2d 543, 557 (D.N.J. 2000); <u>Yeskey</u>, 76 F. Supp. 2d at 574-75.

Defendants argue that Mr. Henry cannot satisfy the second element of an ADA claim because "he has not established that he was denied access to a program, activity, or service on the basis of his purported disability." Defendants urge this Court to conclude that "access to showers is not a program or activity as contemplated by the ADA." Because Mr. Henry's ADA claim fails to establish the third element of a successful ADA claim, I will decline to find that Mr. Henry cannot establish the second element, solely for purposes of this opinion. [8]

Mr. Henry has failed to establish the third element of a successful ADA claim. Defendants argue that Mr. Henry has not established any evidence that his disability was the motivating factor behind the alleged denial of medical care. In his response to the defendants' motion for summary judgment, Mr. Henry fails to support his allegation that he was excluded from a program or discriminated against by reason of his disability. I find that Mr. Henry has failed to allege facts that the prison denied him access to medical facilities or medical treatment "by reason of" his alleged disabilities. At most, Mr. Henry alleges that the defendants ignored his alleged disabilities. The facts do not establish that the defendants denied him access to proper handicapped shower because of a

_____

[8] Although the Defendants cite authority of this Court that "using the toilet, sink and shower facilities or being able to dress oneself, are not programs or activities as contemplated by Title II of the ADA, any more than sleeping is," Thomas v. Pa. Dept. of Corr., 615 F. Supp. 2d 411 (W.D. Pa. 2009), I note that there is authority to the contrary. See Lee v. Sheerer, 2009 U.S. Dist. LEXIS 26904 (D.N.J. March 31, 2009) (finding that evidence of exclusion from programs and benefits such as showering privileges on the basis of disability state a claim under the ADA); Brant v. Volkert, 2001 U.S. Dist. LEXIS 9632 (N.D. Ill. July 5, 2001) ("use of toilet is arguably a 'service' of the prison"); Schmidt v. Odell, 64 F. Supp. 2d 1014 (D. Kan. 1999) (benefits and basic services of the jail, for purposes of the ADA, included "use of the toilet, shower, recreational areas, and obtaining meals.") Thomas presents the stronger position; denial of medical treatment for a disability is not encompassed by the ADA. Furthermore, the use of the shower facilities is not a program or activity contemplated under the ADA. Incarceration is not a "program" or "activity." See Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir 1996). Courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishment clause into a medical malpractice statute for prisoners. Id. Congress has not made an end-run around these decisions in the Americans with Disabilities Act. Id.

"discriminatory animus" due to his disability.  See Brown v. Pa. Dept. of Corr., 290 Fed. Appx. 463, 467 (3d. Cir. 2008).  To the contrary, the record shows that NCP correctional officers assisted Mr. Henry in obtaining crutches for him to move to and from the shower.  When Mr. Henry wrote letters to Warden Buskirk on two occasions, the Warden responded in a timely manner, he directed Mr. Henry how to file a proper medical grievance, and he forwarded a copy of Mr. Henry's issues to the Medical Division for their review.  I find that that Mr. Henry has failed to establish facts that show defendants acted by reason of his disability and that the disability was the motivating factor behind the denial of Mr. Henry's preferred access to showers.   Accordingly, I will grant the Defendants' motion for summary judgment on Counts 2, 4, 7 and 8.

### C.  First and Fourteenth Amendment Retaliation Claim (Count 8)

Mr. Henry contends that the acts, actions, or inactions of the Defendants constitute retaliation in violation of his rights under the First and Fourteenth Amendments. Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d. Cir. 2000).  In the prison context, an individual's rights are lessened, but not extinguished, where legitimate penological interests must be considered in assessing the constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).  To maintain a claim for retaliation under 42 U.S.C. § 1983, a plaintiff must show "(1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the

exercise of his constitutional rights and the adverse action taken against him." <u>Burgos v. Canino</u>, 641 F.Supp. 2d 443, 453 (E.D. Pa. 2009) (quoting <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003)).

Defendants contend that Mr. Henry has not supported his conclusory allegation with any evidence. Mr. Henry seemingly concedes his claim by not addressing it in his response to the defendants' motion for summary judgment. I find that Mr. Henry has not established any facts indicating that there was an adverse action taken by the defendants that deterred Mr. Henry from exercising his constitutional rights. <u>See e.g.</u>, <u>Frazier v. Daniels</u>, 2010 U.S. Dist. LEXIS 50641, at *11 (E.D. Pa. May 20, 2010) (conduct such as denial of dinner on occasion or verbal antagonizing of plaintiff did not constitute "adverse action."); <u>compare</u> <u>Smith v. Mensinger</u>, 293 F.3d 641 (3d Cir. 2002) (filing false misconduct reports was an adverse government action sufficient to support a retaliation claim). The Defendants have not committed an adverse action that deterred Mr. Henry from exercising his First Amendment rights; therefore, the Defendants' motion for summary judgment will be granted with regard to Count 8.

**D. Equal Protection Claim (Count 3)**

Mr. Henry asserts his a cause of action for violation of his rights to equal protection of the laws. The Equal Protection Clause requires that persons who are similarly situated be treated alike. <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985). An equal protection claim may be established when a plaintiff shows that the defendant has intentionally discriminated on the basis of the plaintiff's

membership in a protected class.  Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class.  If the action does not involve a suspect classification, the plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  To state a claim under this theory, the plaintiff must allege that (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment.  <u>Id.</u>

The defendants contend that this claim should be dismissed because there is no evidence suggesting that Mr. Henry was treated differently from other individuals on account of his membership in a protected class.  When asked at his deposition about his claim of discrimination, Mr. Henry explained that he did not experience discrimination as a result of his race; rather, the discrimination he received was a result of "favoritism" by some prison officials who allowed other inmates to use the prison gym.  Mr. Henry recharacterizes his claim in his response to the defendants' motion for summary judgment by asserting that the defendants are not complying with ADA provisions for prisoners with special needs.  However, Mr. Henry has produced no evidence to show that Mr. Buskirk, Mr. Sweeney, and Mr. Bateman are intentionally discriminating against prisoners with special needs or are not complying with provisions of the ADA.  Accordingly, I will grant the Defendants' motion for summary judgment on Mr. Henry's equal protection claim, Count 3.

## IV.    CONCLUSION

Mr. Henry has failed to provide any evidence in support of his Eighth Amendment claim for civil rights violations under 42 U.S.C. § 1983, his claim under the ADA, his equal protection claim, his claim under the Rehabilitation Act, and his retaliation claim. He is therefore unable to demonstrate a genuine issue of material fact that would allow a reasonable jury to find in his favor for any of his claims.  Accordingly, Defendants Buskirk, Sweeney, and Bateman are entitled to summary judgment.

An appropriate Order follows.